IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| Rasputin Stash LLC, Paul N. Coleman, Estate of Martin Dumas, Ernest Frank Donaldson, and Bruce Butler<br><br>Plaintiffs<br>-v-<br><br>Bek David Campbell, Cyanide Breathmint Music, Universal Music Group, Warner Music Group, Mike Simpson, John King,  Interscope, Geffen A&M, Joseph Guillmeron Jones, and Cory Woods<br><br>Defendants | Case No. |

COMPLAINT

Plaintiff's, Rasputin Stash LLC, Paul N Coleman, Bruce Butler, Ernest Frank Donaldson, The Estate of Martin Dumas, ("Plaintiff's or "Rasputin") by and through their attorney Sean Mulroney and Associates complains against Defendants, Bek David Campbell P/K/A *Beck* Cyanide Breath Mint Music, Universal Music Group, Warner Music Group. Mike Simpson, John King, Interscope Geffen A&M, Joseph Guillmeron Jones P/K/A *Jim Jones*, Cory Woods P/K/A "*Raekwon"* ('Defendants" herein)

I. **NATURE OF THIS ACTION**

1. This is a civil action seeking damages and injunctive relief for widespread copyright infringement under the copyright laws of the United States (17 U.S.C. § 101 et seq.)  and Illinois Common law copyrights in the sound recordings.

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. Sections 1331 and 1338. This Court has federal question jurisdiction in this matter in that Plaintiff seeks damages and injunctive relief against Defendants named herein under Sections 501 through 505 of the Copyright Act of 1976, 17 U.S.C. § 101, et seq. and supplemental jurisdiction pursuant to 28 U.S.C. Section 1367 to hear the claims of Misappropriation, Unfair Competition and ownership of the sound recordings (SRs) made prior to February 15, 1972, based on Illinois common law copyright and arise under state law.

3. Venue lies within this Court pursuant to 28 U.S.C. Sections 1391(b)(2)-(3),1391(c),1391(d), and 1400(a) in that a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this District. All, the members of Rasputin Stash are residents of Illinois who composed and authored Sound Recording of "Mr. Cool" and "Dookey Shoe,"

4. All the Defendants, without the consent or permission of the copyright owners, illegally disseminated music containing portions of copyrighted works in every jurisdiction in the United States including this District. Upon information and belief, all Defendants regularly and systematically carried out and continue to carry out substantial, on-going business activities in this District and are subject to personal jurisdiction in this district.

## II. PARTIES
### RASPUTIN STASH LLC

5. Rasputin Stash LLC is an Illinois LLC, organized to administer the Sound recordings and publishing rights for the musical group Rasputin Stash. The group was an eight-member recording group, founded by Martin Dumas, composed of the following members: Paul N. Coleman, Ernest Frank Donaldson. Bruce Butler, Vince Willis, Martin Dumas (deceased), Wardell Peele (deceased), Norval Taylor (deceased) and James Whitfield (deceased).

### BEK DAVID CAMPBELL
### P/K/A "BECK HANSEN"

6. Upon information and belief Beck is an American singer, songwriter, record producer and musician residing in Los Angeles, California. He is famous for his experimental lo-style and his ability to create musical collages that span many genres.

### THE DUST BROTHERS

7. Michael Simpson P/K/A Z Mike and John King P/K/A King Gizmo, collectively known as The Dust Brothers**, a** pair of songwriters and producers based in Los Angeles, famous for their sample-based music,

### CYANIDE BREATH MINT

8. Cyanide Breath Mint Music, an ASCAP Publishing company affiliated with Beck, located in Los Angeles California, managed by Kobalt24

### GEFFEN MUSIC

9. Upon information and belief, Geffen Records is an American Record Label located in the state of California, founded by David Geffen, owned by Interscope Geffen A&M faction of Universal Music

### WARNER MUSIC GROUP

10. Upon information and belief, Warner Music Group (WMG) is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the State of New York.

## UNIVERSAL MUSIC

11. Upon information and belief, Defendant Universal Music group is a corporation organized and existing under the laws of the State of California, with its principal place business in the State of California.

### Joseph Guillermon Jones, P/K/ A *Jim Jones*

12. Upon information and belief, Joseph Guillermon Jones P/K/A "Jim Jones" is an American rapper, producer and writer residing in the state of New York, a founding member of the hip hop collective the Diplomats.

## COREY WOODS
## P/K/A, RAEKWON

13. Upon information and belief, Corey Woods P/K/A Raekwon is a resident of the state of New York, is an American Rapper, a prominent entertainer and founding member of the Wu-Tang Clan.

### III. FACTUAL BACKGROUND

14. On June 1, 1971, Rasputin Stash, ("Rasputin" herein) an eight-man group of musicians from Chicago, entered into a production agreement with Inter-Pan Inc. to record music.

15. On June 1, 1971, Inter-Pan entered a production agreement with Atlantic Records, a label under the Warner Music Group, ("WMG "herein), to provide recordings created and produced by Rasputin, for distribution. Inter-Pan received an advance of $12,500, repayable from royalties earned by Rasputin.

16. Rasputin authored and produced sound recordings ('SR" herein) for an album titled "Rasputin Stash".  All the compositions on the album were written by members of the group and the production was not a for-hire production

17. On September 1, 1971, WMG released the "Rasputin Stash" album. ("Rasputin Album" herein) The album was not promoted and was not a commercial success, at that time. Rasputin never received any royalties from Inter-Pan and had no contact or communication with WMG.

18. Rasputin Stash, disbanded, the Inter-Pan production company was dissolved. and the principals of the production company died.

19. Fifty years after recording the Album, Rasputin Stash members discovered that the "*Rasputin"* album was being offered for sale on the Internet and had been sampled by several hip hop artists.

## BECK

20. In 1996, Beck Hansen ("Beck" herein), a recording artist, sampled two tracks on the Rasputin Album.

21. On June 18, 1996, Beck's album titled "Odelay" was released with the samples from the Rasputin album, on the Geffen label, distributed by Universal Music..

22.  Beck with his producers, the Dust Brothers, sampled Rasputin Stash's SR  of "Dookey Shoe", and "Mr. Cool and created two new songs *Hot Wax, and* "Hi 5."

23. The physical sample of *Dookey Shoe appears* on the *HotWax* track at *2:14* and *2:25*. The producers replayed Dookey Shoe on the track using the same chord progressions but disguise the taking.

24. The "Odelay" album was a commercial success, nominated for a [Grammy Award] for [Album of the Year] in 1997, winning a [Grammy Award] for [Best Alternative Music Album] as well as a [Grammy Award for Best Male Rock Vocal Performance], platinum. selling 2.3 Million albums in the USA and 2.3 Million in Canada.

25. The "Odelay" album is currently being offered for sale on the internet LP's for $30.00 each.

26. Cyanide Breath Mint, Beck's publishing company, filed a copyright including the writings of "Mr. Cool" and "Dookey Shoe", in the new songs. The filings were a false representation of material facts that the new songs were original.

## JOSEPH GUILLERMON
## P/K/A JIM JONES

27.. In 2006, Defendant Joseph Guillermon Jones P/K/A "Jim Jones", ("Jim Jones" herein) sampled Mr. Cool, and created a new song titled, "*We Fly High*" for his album. Notably it includes a direct sample of the vocals of Bruce Butler of Rasputin. Mr. and he was made aware by his grandchildren, that they heard him on the radio on "*We Fly* High."

## COREY WOODS

28. In 2009, Defendant Corey Woods P/K/A "*Raekwon*", sampled *Mr. Cool* and created a new song titled "*Stick Up Music*" on the EMI label distributed by Universal Music.

**WMG**

29. Rasputin Stash inquired of WMG, whether they had any royalties due the group. WMG was reluctant to discuss the royalties because the group was signed to a production company. WMG confirmed that it had royalties payable to Inter-Pan the production company and that Inter-Pan could not be found so the funds were escheated to the Delaware Treasurer.

30. In 2023, after two years of wrangling and requesting WMG to retrieve the escheated royalties, it did so and paid the royalties to Rasputin.

31. WMG prepared royalty statements allegedly paying Rasputin the royalty Inter-Pan would have received if the company hadn't been dissolved.

32. Rasputin's examination of the royalty statements indicated the source of the royalties were from digital sales and sampling licensing royalties. Rasputin became concern about the sample license since the members of Rasputin had not licensed or given authorization to any entity to sample Rasputin's performance on the SR and the writers of the compositions didn't authorize usage,

33. WMG acknowledged that the source of the sampling royalty was payment by Sony Music for Becks use of the sample of Mr. Cool and the payment was shown on the royalty statement. WMG opined that they did not believe that WMG was contractually obligated to have Rasputin's approval to license the SR. Warner confirmed that it had issued a license to Sony Music for the Mr. Cool SR.

34. Rasputin never gave permission or authorization to WMG to license sampling of the Sound Recording or publishing rights. And no rights were granted in the production agreement the group signed in 1971 with Inter-Pan

35, The Sound Recordings produced by Rasputin in 1971 were granted common law copyrights by the laws of the state of Illinois. SRs created after February 15, 1972 were eligible for federal copyright protection. The SR grants two distinct rights, the master recording embodying the performance. Rasputin owned its performance as it was not a work for hire.

36. The writers procured Performing (PA) rights for rights in the music & lyrics in the US copyright office. Dookey Shoe and Mr., Cool were infringed upon, the group never consented to a sampling of their performance.

37. Without Rasputin's' knowledge or consent, the Defendants collectively infringed on Plaintiffs' copyright in the compositions by copyrighting parts of the compositions, sampling the group's performance. WMG licensed portions of the original composition and illegally including the sample in new compositions. The Defendants continue to sell and profit from the se compositions containing the infringement.

## COUNT I
## FEDERAL LAW, COPYRIGHT INFRINGEMENT,
## AGAINST INDIVIDUAL DEFENDANTS

38. Plaintiff hereby incorporates by reference the allegations contained in Paragraphs.1 through 37

39. Rasputin owns a Illinois common law copyright in the recordings of "DOOKEY SHOE" and "Mr. Cool", being created prior to February 15, 1972

40. Defendants were aware of the writers' rights to the SR, the composition, and Sound Recording of "*DOOKEY SHOE*" was the original expression of Paul Coleman and the members of Rasputin Stash, and that it was not the original expression of Defendants or anyone else associated with Defendants, and that the work was and continues to be protected by copyright.

41. Without Rasputin's knowledge or consent, Defendants infringed on the copyright in the composition by copying portions of one of the versions of the composition "Dookey Shoe" and including it in a new copyright without permission.

42. Without Plaintiffs' knowledge, permission or consent, Defendants infringed on the sound recording copyright of the composition by sampling excerpts of the sound recording, "Dookey Shoe" without authorization.

43. Defendant WMG included a royalty for licensing the sample on the royalty statement created. Rasputin was never offered the opportunity to receive an advance or royalties. WMG claimed that it was certain it did not need the artist approval to issue a license. WMG confused rights in the master with Rasputin's performance.

44. Defendants' conduct violated 17 U.S.C. § 106, and Defendants are liable under 17 U.S.C. § 501.

45. All the Defendants' infringing acts described herein were committed willfully and continue to be committed willfully as they are still being distributed.

46. Plaintiffs are entitled to recover all damages sustained as a result of Defendants' unlawful conduct.

## COUNT II
### ILLINOIS COMMON LAW UNFAIR COMPETITION
### AND
### MISAPPROPRIATION AGAINST INDIVIDUAL DEFENDANTS

47. Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 through 46.

48. Rasputin Stash owns an Illinois common law copyright in the sound recordings because the tracks were created prior to February 15, 1972, before sound recordings were afforded federal copyright protection.

49. WMG was aware that the production agreement between Rasputin and Inter-Pan didn't authorize Inter-Pan to license the SR or grant WMG any rights to alter or license. WMG should have contacted Rasputin and allowed Rasputin to license its SR. Instead WMG misappropriated the SR and licensed it

50. Defendant, Beck and the Dust Brothers were aware at all times relevant to this complaint that "Dookey Shoe" was the original expression of Paul Coleman, and that it was not the original expression of Defendants or anyone else associated with Defendants, and that the work was and continues to be protected by copyright.

51. Without Plaintiffs' knowledge or consent, Defendants infringed on the copyright in the sound recording by copying portions of the sound recording "Dookey Shoe" and "Mr. Cool", by including it in a new composition without permission, misappropriating a valuable business asset belonging to Plaintiff.

52. Defendants have not paid any royalties or other compensation to Plaintiffs for Defendants' copying and unauthorized uses of Plaintiff's work. Defendants' conduct is in violation of Illinois common law as it relates to the torts of Unfair competition and Misappropriation.

53. Pursuant to title 17 United States Code, sec/ 301(c), Plaintiffs' rights in the sound recording are protected from defendants' misappropriation and unfair competition under Illinois state law by the same rights and remedies that protect copyright owners regarding infringement

of federal sound recording copyrights on sound recordings that were fixed after February 15,1972.

54. The continued unauthorized use by defendants of portions of the original sound recording of "Dookey Shoe" and Mr. Cool, constitutes the continuing torts of unfair competition and wrongful appropriation (piracy) of said sound recording under the common law and statutory law of the State of Illinois. The Odelay album containing the samples is currently offered online for sale online for $30.00

55. All the Defendants' infringing acts described herein continue to be committed willfully.

56. Plaintiffs are entitled to recover all the income generated from the sale of the samples and damages sustained because of Defendants' unlawful conduct.

## COUNT III
## CONTRIBUTORY COPYRIGHT INFRINGEMENT

57. Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 56

58. Plaintiffs, as the owner of the registered copyright in the original musical Compositions, have the exclusive right to authorize the performance, reproduction, and distribution of *Dookey Shoe* work pursuant to Illinois law as well as 17 U.S.C. § 106.

59. Upon information and belief, Defendants Universal Music Group and Warner Music Group have licensed, manufactured, reproduced and/or distributed the SR samples and continue

to manufacture, reproduce and distribute large numbers of copies of the sampled songs in violation of Plaintiff's copyright.

60. Plaintiffs are entitled to recover all damages sustained as a result Sony Music Entertainment, Universal Music Group, Warner Music Group.

## COUNT IV
### ACTION FOR ACCOUNTING
### (Against all Defendants)

61. Plaintiffs hereby incorporates by reference the allegations contained in paragraphs 1 through 60.

62. Compensation is due and owing from Defendants to Plaintiffs. Plaintiffs are not in the position to ascertain the proper compensation they are due without an accounting of Defendants sales, licensing revenues from the use of Plaintiffs' sound recording and a judgment for the balance.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Rasputin Stash pray that this Honorable Court grant the following relief in their favor:

1. Permanently restrain and enjoin Defendants and all persons acting in concert with Defendants of acting or purporting to act on their behalf, from infringing Plaintiffs federal and common-law copyrights in any manner whatsoever, and specifically distributing copies of Plaintiffs musical composition or sound recording;

2. Order the impounding of all musical compositions and sound recordings in

Defendants' possession, custody, or control that were made or used in violation of Plaintiffs federal and common law copyrights pursuant to 17 U.S.C. § 106;

    3. Award Plaintiffs their actual damages and Defendants' profits attributed to Defendants' act of infringement.

    4. Order a full accounting from Defendants arising out the sales and publishing activities relating to any of Plaintiffs' rights, and render a judgment for the balance due to Plaintiffs.

    5. Award punitive damages appropriate for the egregious nature of Defendants' tortious conduct.

    6. Award Plaintiffs' attorney fees and costs pursuant to 17 U.S.C. §505; and     7. Award such other relief as is warranted by the facts and the law and is just under the circumstances. Plaintiff hereby demands a jury trial on all issues properly triable before a jury

PLAINTIFF DEMANDS TRIAL BY JURY ON ALL COUNTS.

Respectfully submitted,

ARDC #6196973

Sean M. Mulroney & Associates

516 N. Ogden Ave., Suite 191

Chicago, IL  60607

(312) 756-0011

sean@seanmulroney.com