UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Rasputin Stash, LLC, Paul N. Coleman, Estate of Martin Dumas, Ernst Frank Donaldson, and Bruce Butler, <br><br>         Plaintiffs, <br><br>    v. <br><br> Bek David Campbell, Mike Simpson, John King, Joseph Guillmeron Jones, Cory Woods, and Atlantic Recording Corporation, <br><br>         Defendants. | Case No. 1:25-Cv-04896 <br><br> Hon. Jeremy C. Daniel |

**DEFENDANT ATLANTIC RECORDING CORPORATION'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2) and 12(b)(6)**

## I.    INTRODUCTION

This litigation is a transparent attempt to extract an unwarranted settlement. The Plaintiffs are made up of select surviving members of the dissolved band Rasputin's Stash[1]—Paul N. Coleman, Bruce Butler, and Ernest Frank Donaldson—as well as the Estate of the deceased band member Martin Dumas, and Rasputin Stash LLC, the entity that purports to control the band's intellectual property rights (collectively, "Plaintiffs"). Plaintiffs' operative Second Amended Complaint (ECF 52, the "SAC") alleges a claim for copyright infringement against a number of

---

[1] The Second Amended Complaint refers to the band as "Rasputin Stash," but pursuant to the agreements attached thereto, it appears the correct name is "Rasputin's Stash." ECF 52.

artists (Count One), and a claim titled "Breach of Contract/Accounting/ Rescission" against Defendant Atlantic Recording Corporation ("Atlantic") (Count Two).

As a preliminary matter, however, Atlantic is not subject to personal jurisdiction in this Court. Atlantic does not maintain any contacts with Illinois—much less continuous or systematic contacts—and as the SAC confirms, all of the conduct giving rise to Plaintiffs' claims arose outside of the forum state.

Plaintiffs' alleged claim against Atlantic also fails on the merits. The SAC asserts a single cause of action against Atlantic for "Breach of Contract/Accounting/Rescission," based on the allegation that Atlantic failed to pay royalties derived from the exploitation of Plaintiffs' works. However, Plaintiffs have not identified any contract with Atlantic that could give rise to their combined "Breach of Contract/Accounting/Rescission" claim. To the contrary, the contracts attached to the SAC make clear that ***Atlantic has no obligation to pay Plaintiffs any monies***. Moreover, Plaintiffs' prior pleadings confirm that they did, in fact, receive the royalties they are now purportedly suing over. Taken together, Plaintiffs' pleadings confirm that they cannot state a plausible claim for relief against Atlantic.

Because Atlantic is not subject to personal jurisdiction in Illinois, and because Plaintiffs' SAC fails to properly allege a claim against it, Atlantic respectfully requests that the Court dismiss the SAC as against Atlantic, with prejudice.

## II.    SUMMARY OF FACTUAL ALLEGATIONS

### A.    <u>The Parties</u>

Plaintiffs include Paul N. Coleman, Bruce Butler, and Ernest Frank Donaldson, who were members of the 1970's band Rasputin's Stash, as well as the Estate of former Rasputin's Stash

member Martin Dumas, and the entity that purports to administer their sound recording and publishing rights, Rasputin Stash LLC. SAC, ¶¶ 2-6.

Atlantic is a record label. It is a Delaware corporation, with its principal place of business in New York. *Id.* ¶ 8; Declaration of Marcos Lozada ("Lozada Decl."), ¶ 2.

**B.      The Relevant Agreements**

The SAC alleges that on June 1, 1971, the members of Rasputin's Stash "entered into a production agreement with [a third-party entity called] Inter-Pan Inc. to record music." SAC, ¶ 18. The SAC further alleges that, on the same day, Inter-Pan entered into a production agreement with Atlantic, for the distribution of those sound recordings. *Id.* ¶ 19, Ex. 2 (the "Atlantic Agreement"). Pursuant thereto, Inter-Pan assigned all rights in the Rasputin's Stash sound recordings to Atlantic, and Atlantic agreed to pay Inter-Pan a royalty of "one-half (1/2) of the net profits actually received by Atlantic." *Id.* ¶¶ 22-23; Ex. 2, ¶¶ 2-3. The Atlantic Agreement was made "pursuant to and governed by the laws of the State of New York applicable to agreements to be wholly performed therein." SAC, ¶ 24; *id.*, Ex. 2, ¶ 14.

In order to induce Atlantic to enter into the Atlantic Agreement, the members of Rasputin's Stash—including Plaintiffs—concurrently executed an Inducement Letter, guaranteeing the representations and warranties of Inter-Pan. SAC, Ex. 1 (the "Inducement Letter").[2] Pursuant thereto, Plaintiffs agreed that they would "look solely" to Inter-Pan "for the

---

[2] Plaintiffs identify Exhibit 1 as the production agreement between Plaintiffs and Inter-Pan. SAC, ¶ 18. This is plainly inaccurate based on the face of the exhibit: Exhibit 1 is addressed to Atlantic, signed by Plaintiffs ("Very truly yours, Artist" with signatures of Martin Luther Dumas, Jr., Bruce Butler, Paul Neal Coleman, Ernest Frank Donaldson, and other Rasputin's Stash members), and states that its purpose is to induce Atlantic to enter into an agreement with Inter-Pan Inc. "[W]here the allegations of a pleading are inconsistent with the terms of a written

3

payment of all monies payable" for any services Plaintiffs rendered, and that Atlantic "shall have no responsibility to [Plaintiffs] whatsoever." SAC, Ex. 1, ¶ 3.

Pursuant to these agreements, on September 1, 1971, Atlantic released the album "Rasputin's Stash," featuring songs written and recorded by Plaintiffs. SAC, ¶ 27. Among others, "Rasputin's Stash" included the songs *Dookey Shoe* and *Mr. Cool*. *Id*. ¶ 28.

At some point thereafter, Rasputin's Stash disbanded and Inter-Pan dissolved. *Id*. ¶ 31.

### C.       The Evolution of Plaintiffs' Claims

The SAC alleges that in 2023, more than 50 years after its release, Plaintiffs "discovered" that the album "Rasputin's Stash" was being "offered for sale on the internet," and that *Dookey Shoe* and *Mr. Cool* had been sampled by certain hip hop artists.[3] *Id*. ¶ 32. The SAC alleges that Atlantic generated profit by licensing samples of *Dookey Shoe* and *Mr. Cool*, but did not pay any of the profits to Inter-Pan or to any Plaintiff. SAC, ¶¶ 35-36.

Plaintiff's Initial Complaint tells a different story. ECF 1 ("Initial Complaint"). The Initial Complaint alleges that Plaintiffs learned royalties attributable to *Dookey Shoe* and *Mr. Cool* were escheated to the Delaware Treasurer after Inter-Pan could not be found. ECF 1, ¶ 29. Plaintiffs further alleged that in 2023, those royalties were ***retrieved*** from the Delaware Treasurer ***and paid to Plaintiffs***, along with the associated royalty statements. *Id*., ¶¶ 30-31.  In other

---

contract attached as an exhibit, the terms of the latter, fairly construed, must prevail over the averments differing therefrom." *Foshee v. Daoust Const. Co*., 185 F.2d 23, 25 (7th Cir. 1950).

[3] The SAC asserts a claim of copyright infringement against the "Artist Defendants," Bek David Campbell, Michael Simpson, John King, Joseph Guillermon Jones, and Cory Woods, apparently pertaining to this alleged sampling. SAC, ¶¶ 40-66. It does not appear that service has been effectuated on any of the Artist Defendants. Atlantic is not—and could not be—named in that cause of action as Atlantic owns the sound recordings. *Id.* ¶ 22.

words, Plaintiffs have previously conceded in a pleading before this Court that they have already received the royalties and associated royalty statements that they would have been entitled to if Inter-Pan had not been dissolved. *Id*.

The Initial Complaint asserted claims of direct and contributory copyright infringement based on the alleged sampling of the sound recordings of *Dookey Shoe* and *Mr. Cool*, and a claim for accounting based on the same. ECF 1. Plaintiffs alleged that, although they received royalties for the use of the samples, they never gave permission for such licenses to be granted. *Id*. ¶¶ 31-34. As explained, however, Atlantic—not Plaintiffs—owns those sound recordings, dooming their claims of infringement. SAC, ¶ 22; ECF 35.

Faced with that reality, Plaintiffs now attempt to pivot. The SAC asserts an impermissibly cobbled claim for "Breach of Contract/Accounting/Rescission" based on the allegation that Plaintiffs have not received any payments attributable to the samples, blatantly contradicting their original pleading.

## III.    ATLANTIC SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

Plaintiffs bear the burden of establishing a prima facie showing of personal jurisdiction. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). While well-pleaded allegations in the complaint are accepted as true, where the defendant submits affidavits or other evidence, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction. *Mold-A-Rama Inc. v. Collector-Concierge-Int'l*, 451 F.Supp.3d 881, 884 (N.D. Ill. 2020). "If the plaintiff fails to refute a fact contained in the defendant's affidavit, that fact is accepted as true." *Id*.

5

"The Illinois long-arm statute permits the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause, … so here the state statutory and federal constitutional inquiries merge." *Tamburo*, 601 F.3d at 700. "The key question is therefore whether the defendants have sufficient 'minimum contacts' with Illinois such that the maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *Id*. (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).

Personal jurisdiction can be either general or specific. *Mold-A-Rama Inc.*, 451 F.Supp.3d at 889. Plaintiffs fail to allege any facts in support of either.

### A.      **Plaintiffs Cannot Establish General Jurisdiction**

General jurisdiction exists only when the defendant has "continuous and systematic" contacts that are "sufficiently extensive and pervasive to approximate physical presence." *Tamburo*, 601 F.3d at 701. Where, as here, the forum is not the defendant's place of creation or principal place of business, general jurisdiction is only possible in "***exceptional case[s]***" where the defendant's operations in the forum are "***so substantial*** and of such a nature as to render the corporation at home in that State." *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014); *McClellan v. CSX Transport., Inc.*, 2018 WL 6192192, at *2 (N.D. Ill. Nov. 28, 2018) ("Qualifying as an exceptional case 'require[s] more than the "substantial, continuous, and systematic course of business" that was once thought to suffice.'").

Plaintiffs do not allege any facts connecting Atlantic to Illinois, much less "continuous or systematic" ones. The SAC alleges only that "each Defendant"—without distinction or specificity—"derives substantial revenue from activities directed at this judicial district, conducts systemic and continuous business within this judicial district, and has taken actions causing harm

6

to Plaintiffs, residents of Illinois." SAC, ¶ 17. This conclusory allegation need not be credited. *Henneberger v. Ticom Geomatics, Inc.*, 602 Fed.Appx. 352, 353 (7th Cir. 2015) ("bald assertion that the defendants had minimum contacts with Illinois was not enough to make a prima facie case").

To the contrary, the SAC correctly alleges that Atlantic is a Delaware corporation with its principal place of business in New York. SAC, ¶ 8; Lozada Decl., ¶ 2. Atlantic does not have any operations, offices, bank accounts, real estate, or employees in Illinois, and does not conduct systemic or continuous business within Illinois. Lozada Decl., ¶¶ 3-5. Accordingly, Atlantic cannot be deemed "at home" in Illinois, and general jurisdiction does not exist.

### B. Plaintiffs Cannot Establish Specific Jurisdiction

Nor can Plaintiffs establish specific jurisdiction, which focuses "on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). The "primary concern" in evaluating specific jurisdiction is "the burden on the defendant." *Bristol-Myers Squibb Co. v. Supr. Ct. of Cal.*, 582 U.S. 255, 263 (2017). Specific personal jurisdiction is appropriate only "where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Tamburo*, 601 F.3d at 702.

In other words, Atlantic must have "minimum contacts" with Illinois, such that the "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316. In analyzing purposeful direction, the "defendant's conduct and connection with the forum state must be substantial enough to make it reasonable for the

7

defendant to anticipate that he could be haled into court there." *Northern Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014). This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts or of the 'unilateral activity of another party or a third person.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

Additionally, Atlantic's contacts with Illinois "must directly relate to the challenged conduct or transaction." *Northern Grain Mktg.*, 743 F.3d at 492. "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers*, 582 U.S. at 264.

The SAC does not make ***any*** factual allegations of forum-related conduct by Atlantic. As the Declaration of Marcos Lozada confirms, none exist: Atlantic is a Delaware corporation with its principal place of business at 1633 Broadway, New York, NY; Atlantic is not incorporated in Illinois, and is not registered to do business in Illinois; Atlantic does not rent, own, or lease any real estate in Illinois, nor operate any offices in Illinois; Atlantic does not have any employees based in Illinois; and Atlantic has no mailing address in Illinois, and no bank accounts in Illinois. Lozado Decl., ¶¶ 2-5.[4]

To the contrary, the pleadings confirm that Plaintiffs' claims arise out of conduct occurring entirely ***outside*** of Illinois. The Atlantic Agreement is explicit that it "shall be construed pursuant to and governed by the laws of the ***State of New York*** applicable to

---

[4] As explained above, Plaintiffs' conclusory statement that all defendants conduct business and derive revenue from Illinois cannot support a finding of personal jurisdiction. *Henneberger*, 2015 WL 2214224, at *1.

agreements to be wholly performed therein…" SAC, ¶ 24; Ex. 2, ¶ 14 (emphasis added). The

SAC alleges that Plaintiffs' sound recordings were protected "under the laws of the **State of New**

**York**." SAC, ¶ 25 (emphasis added). The Initial Complaint alleged that royalties were escheated

to, and later retrieved from, the **Delaware** Treasurer. ECF 1 ¶¶ 29-30 (emphasis added).

The sole connection to Illinois is Plaintiffs' alleged residences there. It is well

established, however, that a plaintiff's residence is insufficient to confer jurisdiction over a

defendant. *Walden*, 571 U.S. at 286 ("[A] defendant's relationship with a plaintiff … standing

alone, is an insufficient basis for jurisdiction."); *Hill v. Daytona Hospitality II, LLC*, 2015 WL

14069378, at *3 (N.D. Ill. May 29, 2015) ("The relevant contacts for a personal jurisdiction

analysis are those that 'the defendant *himself* creates with the forum State,' not the contacts

between the plaintiff and the forum or the defendant and the plaintiff if those contacts are

unrelated to the forum.").

Plaintiffs fail to sufficiently allege any contacts between Atlantic and Illinois, much less

that their claims arise out of those (nonexistent) contacts. The Declaration of Marcos Lozada

confirms that none exist. Lozado Decl., ¶¶ 2-5. Accordingly, Atlantic must be dismissed for lack

of personal jurisdiction.

## IV.    PLAINTIFFS FAIL TO PLAUSIBLY STATE A CLAIM AGAINST ATLANTIC

Even if the Court were to exercise personal jurisdiction over Atlantic—though Atlantic

respectfully submits that it cannot—Plaintiffs' claim against Atlantic must still be dismissed.

### A.    Legal Standard Under Fed. R. Civ. P. 12(b)(6)

"A Rule 12(b)(6) motion tests 'the legal sufficiency of a complaint' as measured against

the standards of Rule 8(a)." *Mbandi v. Pangea Ventures LLC*, 2022 WL 16776005, at *1 (S.D.

9

Ill. Nov. 8, 2022). Accordingly, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court need not accept as true a "legal conclusion couched as a factual allegation." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Therefore, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Where dismissal is warranted, "a court need not allow amendment if," as here, "doing so would be futile." *Amachree v. Garland*, 2023 WL 3033493, at *2 (7th Cir. Apr. 21, 2023).

Plaintiffs assert a single cause of action against Atlantic, which is labeled "Breach of Contract/Accounting/Rescission." The SAC fails to plausibly allege a claim under any theory.

### B.    Plaintiffs Cannot Plausibly Allege a Breach of Contract Claim

"Under New York law,[5] the elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages." *Berman v. Sugo LLC*, 580 F.Supp.2d 191, 202 (S.D.N.Y. 2008); *Diesel Props S.r.l. v. Greystone Business Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011) (similar). Here, the pleadings foreclose Plaintiffs from plausibly alleging a claim for breach of contract.

Plaintiffs' breach of contract claim is based on the "Agreements between Plaintiffs, Inter-Pan, and Atlantic." SAC, ¶ 77; *see also id.* ¶¶ 78-80. The SAC defines the "Agreements" to include two separate contracts: a "production agreement" between Plaintiffs and Inter-Pan, and a "production agreement" between Inter-Pan and Atlantic. SAC, ¶¶ 18-19, 21. Neither is an

---

[5] The Atlantic Agreement contains a New York choice of law provision. SAC, ¶ 24; *id.*, Ex. 2.

10

agreement between Plaintiffs and Atlantic. That both Plaintiffs and Atlantic contracted with the same third party—Inter-Pan—does not create an obligation or relationship between them. The SAC seemingly recognizes this, carefully pleading around the facts by alleging that the Agreements obligated Atlantic to "pay royalties" or to "pay Inter-Pan," but never alleging that Atlantic has any obligation to Plaintiffs. No such obligation exists.

Although not specifically alleged, the only agreement between Plaintiffs and Atlantic is the Inducement Letter, attached to the SAC as Exhibit 1. As such, the only document on which Plaintiffs could conceivably base their claim is the Inducement Letter. However, Plaintiffs have not identified any potential breach of the Inducement Letter, nor could they. The language of the Inducement Letter is clear: Plaintiffs agreed that they "will look solely to [Inter-Pan] for the payment of all monies payable to" them and that Atlantic "shall have no responsibility to [Plaintiffs] therefor whatsoever." SAC, at Ex. 1, ¶ 3. Any alleged failure to pay royalties by Atlantic thus cannot constitute a breach. "[T]he plain, unambiguous requirement of the contract must be given effect, notwithstanding the naked allegation of the complaint." *Foshee*, 185 F.2d at 25-26 ("[W]here the allegations of a pleading are inconsistent with the terms of a written contract attached as an exhibit, the terms of the latter, fairly construed, must prevail over the averments differing therefrom."); *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) ("When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss.") (collecting cases).

Moreover, even if Plaintiffs could identify some obligation of Atlantic to pay royalties to Plaintiffs (and they cannot), their prior pleading still forecloses their breach of contract claim. Plaintiffs' Initial Complaint explicitly alleged that they already received the royalties otherwise

11

payable to Inter-Pan (and then to Plaintiffs), along with royalty statements indicating the source of the royalties was "from digital sales and sampling licensing royalties." ECF 1 ¶¶ 29-33. Those allegations were "signed by [Plaintiffs'] attorney under the obligations of Rule 11, and the allegations were specific and comprehensive, evincing an absence of any mistake." *Aasen v. DRM, Inc.*, 2010 WL 2698296, at *2 (N.D. Ill. July 8, 2010). The SAC now flatly contradicts those allegations, alleging that Plaintiffs have not received "any of the profits generated by licensing samples." SAC, ¶ 36; *id.* ¶ 82 (Atlantic "has not made any payments to Plaintiffs"). "The revised allegations in the [SAC] reflect an intentional manipulation to avoid the consequences of" the prior motion to dismiss. *Aasen*, 2010 WL 3698296, at *2. Where, as here, "the amended allegations flatly contradict the originals and there is no suggestion that the originals were made in error," the Court may consider the allegations of both pleadings together in assessing the plausibility of Plaintiffs' claims. *Nance v. NBCUniversal Media, LLC*, 2018 WL 1762440, at *5 (N.D. Ill. Apr. 12, 2018). Taking both pleadings together, it is clear that Plaintiffs' "breach of contract/accounting/rescission" claim should be dismissed with prejudice. *Id.* ("Allowing Plaintiff to remold his allegations around Defendants' Motions will only waste the Court's and the parties' time: Such earnest gamesmanship is not in the interests of justice and will not be allowed.").

In sum, Plaintiffs have not identified any contract between themselves and Atlantic that has been breached. Nor could they, as Plaintiffs explicitly agreed that Atlantic would have no obligations toward them. Worse, Plaintiffs previously admitted that notwithstanding this lack of obligation, they were already paid the specific royalties they now claim they are entitled to. The SAC does not—and cannot—plausibly allege a breach of contract claim.

12

## C. Plaintiffs Cannot Plausibly Allege a Claim for Rescission

Plaintiffs' claim fares no better colored as a claim for rescission. "The party asserting a rescission claim under New York law must plead and ultimately prove (a) a lawful right to rescind, (b) prompt notice of an intention to rescind, and (c) the restoration of the *status quo*." *In re New York Skyline, Inc.*, 432 B.R. 66, 76 (S.D.N.Y. 2010). "To demonstrate a lawful right to rescind, the plaintiff must plead and prove fraud in the inducement of the contract, failure of consideration, an inability to perform the contract after it is made, or a breach of the contract that substantially defeats the purpose for which it was made." *Id*. The SAC alleges no such grounds.

Preliminarily, Plaintiffs cannot rescind the Atlantic Agreement between Atlantic and Inter-Pan, to which Plaintiffs were not a party. Plaintiffs' rescission claim must therefore be limited to the Inducement Letter—the sole agreement between Plaintiffs and Atlantic. Plaintiffs allege they are entitled to rescission based on "Atlantic's failure to make any of the required payments," and the "dissolution of Inter-Pan." SAC, ¶¶ 84-85. As explained above, however, Atlantic had no obligation to make payments to Plaintiffs, and regardless, Plaintiffs admit that they already received the royalties they now claim to be at issue. Nor does the SAC explain how the dissolution of Inter-Pan—a third party—is cause for rescission. It is not.

Plaintiffs also fail to allege "prompt notice of an intention to rescind," or "the restoration of the *status quo*." *In re New York Skyline, Inc.*, 432 B.R. at 76. Courts routinely find that a delay of mere months is sufficient to preclude a rescission claim. *See*, *e.g.*, *Saitta v. New York City Transit Auth. et al.*, 55 A.D.3d 422, 423 (1st Dep't 2008) (four-month delay in seeking rescission was unreasonable as a matter of law). The agreements identified in the SAC were entered into on June 1, 1971. In other words, Plaintiffs' claim improperly asks this Court to undo more than 50

13

years of history. That renders "the status quo practically impossible to recreate," and dooms Plaintiffs' request for rescission. *Unger v. Ganci*, 200 A.D.3d 1604, 1604 (4th Dep't 2021) (rescission "is appropriate only where, among other things, the status quo can be 'substantially restored'").

Moreover, rescission is an equitable remedy not available unless Plaintiffs lack an adequate remedy at law. *New Paradigm Software Corp. v. New Era of Networks, Inc.*, 107 F.Supp.2d 325, 329-30 (S.D.N.Y. 2000). Even assuming Plaintiffs could otherwise state a claim for rescission (and they cannot), the SAC alleges no reason why damages would not be an adequate remedy. *Id*. To the contrary, Plaintiffs combine their claim with a breach of contract claim, seeking "one half of the net profits derived from any use of the sound recordings." SAC, ¶ 81. Accordingly, Plaintiffs cannot plausibly allege a claim for rescission.

**D.      Plaintiffs Cannot Plausibly Allege a Claim for Accounting**

Nor can Plaintiffs overcome a motion to dismiss by coloring their claim as an accounting. In New York, a claim for accounting is "premised upon the existence of a confidential or fiduciary relationship." *Red Apple Media, Inc. v. Batchelor*, 729 F.Supp.3d 350, 371-72 (S.D.N.Y. Apr. 8, 2024); *Faulkner v. Arista Records LLC*, 602 F.Supp.2d 470, 484 (S.D.N.Y. 2009) (similar, dismissing accounting claim between record label and artist). "[A]rms-length business arrangements are insufficient to create fiduciary obligations that might support an accounting." *Red Apple Media, Inc.*, 729 F.Supp.3d at 371-72 (dismissing claim for accounting).

The SAC does not allege any relationship between Plaintiffs and Atlantic that could plausibly give rise to a fiduciary duty. To the contrary, as detailed above, the Inducement Letter specifically disavows any such duty. SAC, at Ex. 1, ¶ 3 ("I agree that you shall have no

14

responsibility to me therefor whatsoever").

Additionally, to state a claim for accounting Plaintiffs must allege "that there is no adequate legal remedy." *Telesco v. Neuman*, 2015 WL 2330166, at *7 (S.D.N.Y. Mar. 11, 2015). "An equitable accounting claim cannot coexist with a breach of contract claim covering the same subject matter." *Id.* Where, as here, Plaintiffs seek monetary damages in a breach of contract claim, an accounting claim is unavailable. *Id*.

## V.    CONCLUSION

For all the reasons explained herein, Atlantic should be dismissed with prejudice.

DATED:  June 29, 2026                          Respectfully submitted,

                                               Tabet DiVito & Rothstein LLC


                                               By:  */s/ Timothy A. Hudson*
                                                    Timothy A. Hudson, Esq.
                                                    TABET DIVITO & ROTHSTEIN LLC
                                                    209 S. LaSalle Street, Suite 700
                                                    Chicago, Illinois 60604
                                                    (312) 762-9476 (office)
                                                    *Attorneys for Defendant Atlantic*
                                                    *Recording Corporation*

DATED:  June 29, 2026                          Mitchell Silberberg & Knupp LLP


                                               By:   */s/ Alexandra L. Anfuso*
                                                    Alexandra L. Anfuso (SBN 333440 )
                                                    MITCHELL SILBERBERG & KNUPP LLP
                                                    2049 Century Park East, 18th Floor
                                                    Los Angeles, CA 90067-3120
                                                    (310) 312-2000
                                                    *Attorneys for Defendant Atlantic*
                                                    *Recording Corporation*

15