**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RASPUTIN STASH LLC, *et al.*,<br>Plaintiffs<br><br>v.<br><br>BEK DAVID CAMPBELL, *et al.*,<br>Defendants | No. 25 CV 4896<br><br>Judge Jeremy C. Daniel |

**ORDER**

The defendant's motion to dismiss [56] is granted. Any amended complaint is due on or before September 24, 2026. The September 15, 2026, status hearing is stricken. Further, there is no indication on the docket that the plaintiff has served each defendant within 90 days of filing the complaint. *See* Fed. R. Civ. P. 4(m). Failure to serve any defendant and provide proof of service on or before September 24, 2026, may result in dismissal of the complaint as to that defendant.

**STATEMENT**

This case is before the Court on Defendant Atlantic Recording Corporation's ("Atlantic") motion to dismiss Plaintiff Rasputin Stash, LLC ("Rasputin's Stash"),[1] Paul N. Coleman, Estate of Martin Dumas, Ernst Frank Donaldson, and Bruce Butler's second amended complaint ("SAC"). (R. 56.) The events described herein are drawn from the SAC, (R. 52,) and are presumed true for the purpose of resolving the defendant's motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (Rule 12(b)(6) motion); *Schoeps v. Sompo Holdings, Inc.*, 160 F.4th 815, 826 (7th Cir. 2025) (citation omitted) (Rule 12(b)(2) motion).

**Background and Legal Standard**

Rasputin's Stash was an eight-member music group from Chicago. (SAC ¶ 18.)[2] In 1971, the group entered into an agreement to record music (the "Inter-Pan Agreement") with Inter-Pan Inc. ("Inter-Pan"). (*Id.*) Under the Inter-Pan Agreement, Rasputin's Stash agreed to make music and "assign[] their rights" in that music to

[1] The Court uses Rasputin's Stash because that is how the group is identified in the agreements underlying this action. (*See, e.g.*, R. 52-1; R. 52-2.)
[2] For ECF filings, the Court cites to the page number(s) in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

Inter-Pan in exchange for a percentage of profits Inter-Pan earned from that music. (*Id.* ¶ 20.) Separately, Inter-Pan entered into an agreement with Atlantic (the "Atlantic Agreement") to provide Atlantic with Rasputin's Stash's music. (*Id.* ¶ 19.) Under the Atlantic Agreement, "Inter-Pan assigned its rights" in Rasputin's Stash's music to Atlantic in exchange for Atlantic paying Inter-Pan half of the profits Atlantic received. (*Id.* ¶¶ 22–23.) The Atlantic Agreement was governed by New York law and was "to be wholly performed therein." (*Id.* ¶ 24.) The music Rasputin's Stash made under the Inter-Pan Agreement, including a September 1971 album with hits including *Mr. Cool* and *Dookey Shoe*, is protected by copyright law. (*Id.* ¶¶ 25–30.)

Rasputin's Stash later disbanded and Inter-Pan dissolved. (*Id.* ¶ 31.) In 2023, the plaintiffs learned that Rasputin Stash's September 1971 album was being sold online and that *Mr. Cool* and *Dookey Shoe* were being sampled by other artists (the "artist defendants"). (*Id.* ¶ 32.) The plaintiffs allege that Atlantic licensed that music to the artist defendants without getting the plaintiffs' authorization or paying them. (*Id.* ¶¶ 33–38.) They bring a claim for copyright infringement against the artist defendants, alleging that those defendants used copyright-protected music without authorization. (*Id.* ¶¶ 40–66.) The plaintiffs also bring a claim against Atlantic for "breach of contract/accounting/rescission," alleging that Atlantic failed to pay the agreed-upon royalties. (*Id.* ¶¶ 67–85.) Atlantic moves to dismiss for lack of personal jurisdiction and failure to state a claim. (R. 56); Fed. R. Civ. P. 12(b)(2), 12(b)(6).

A motion under Rule 12(b)(2) challenges the Court's jurisdiction over a party. Fed. R. Civ. P. 12(b)(2). "The plaintiffs bear the burden of establishing personal jurisdiction," but at this stage "that burden is met by making a *prima facie* showing of jurisdictional facts." *Schoeps*, 160 F.4th at 826 (citing *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020)). "When affidavits regarding the issue of personal jurisdiction are submitted, the district court may weigh the affidavits." *Curry*, 949 F.3d at 393. However, the Court must "accept all well-pleaded facts alleged in the complaint as true and resolve any factual disputes in the plaintiffs' favor." *Schoeps*, 160 F.4th at 826 (citation omitted).

**Analysis**

A court can have personal jurisdiction over a defendant in two ways: general or specific. *B.D. ex rel. Myers v. Samsung SDI Co.*, 143 F.4th 757, 765 (7th Cir. 2025) ("*Myers*"). General personal jurisdiction is proper over a defendant that has sufficiently "continuous and systematic" contacts with the forum state such that the defendant is "at home" there. *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Specific personal jurisdiction is "narrower" and turns on "the relationship among the defendant, the forum, and the litigation." *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014)). Here, only specific personal jurisdiction is at issue. (R. 63 at 2–7.) Specific personal jurisdiction involves a "three-prong test." *Myers*, 143 F.4th at 765. First, the defendant must "purposefully avail[]

itself of the privileges of conducting activities" in the forum state. *Id.* Second, there must be an "adequate connection . . . between the defendant's activities in the forum and the underlying lawsuit" such that the suit arises out of or relates to the defendant's contacts. *Id.* Third, the exercise of personal jurisdiction must comport with "notions of fairness." *Id.*

The plaintiffs fail to make a *prima facie* showing that Atlantic purposefully directed any suit-related conduct toward Illinois. They first point to the Atlantic Agreement and letter agreements sent the same day the Agreement was executed. (R. 63 at 4–5.) But neither indicates that Atlantic purposefully availed itself of the Illinois market or Illinois law. The Atlantic Agreement is governed by New York law and is "to be wholly performed" in New York. (R. 52 ¶ 24.) This does not suggest that Atlantic "deliberately reached out beyond its home" into Illinois by signing it. *Myers*, 143 F.4th at 767. Even with Inter-Pan's Illinois address, an agreement with an Illinois-based counterparty "by itself, does not establish specific personal jurisdiction." *North v. Ubiquity, Inc.*, 72 F.4th 221, 226 (7th Cir. 2023) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The plaintiffs characterize the letter agreements as "clear" indications that Atlantic sought out Rasputin's Stash. (R. 63 at 4.) But the plaintiffs fail to connect those letters, which memorialize terms related to the Atlantic Agreement, to Illinois. Rather, they argue the letters show a connection between Atlantic and the plaintiffs. But the minimum contacts inquiry turns on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Curry*, 949 F.3d at 397 (quoting *Walden*, 571 U.S. at 285).

Moreover, the plaintiffs' reliance on *Moser v. Ayala*, No. 11 C 3563, 2013 WL 1337187 (N.D. Ill. Mar. 29, 2013) is misplaced. There, the defendant "admitted" that over one thousand copies of allegedly infringing music were sold in Illinois. *Id.* at *2. Further, the defendant performed and "actively" marketed the music in Illinois and hired an Illinois-based marketing agency. *Id.* at *2–*3. The plaintiffs here do not allege that Atlantic sold, marketed, or distributed any music in Illinois. Instead, they allege that Atlantic licensed the music to the artist defendants, who the plaintiffs allege are residents of California and New York, not Illinois. (R. 52 ¶¶ 7, 9–12.)

The plaintiffs' other arguments fare no better. They contend that Atlantic "sought out" Chicago-based Rasputin's Stash in Illinois. (R. 63 at 4 (citing R. 52 ¶¶ 18–19).) But this is not supported by the allegations the plaintiffs cite, nor any others the Court can locate. The cited allegations instead suggest that Inter-Pan, not Atlantic, sought out Rasputin's Stash. (*See* R. 52 ¶ 18 (alleging that the Inter-Pan Agreement memorialized terms between the plaintiffs and Inter-Pan in which "members of Rasputin recorded exclusively with Inter-Pan"); *id.* ¶¶ 19, 22 (alleging that the Atlantic Agreement was an assignment of rights from Inter-Pan to Atlantic).) While Atlantic did contract with Inter-Pan, and Inter-Pan contracted separately with the plaintiffs, a defendant's minimum contacts with a forum state cannot be predicated on its contacts with an intermediate third party. *Curry*, 949 F.3d at 397 (quoting

*Walden*, 571 U.S. at 284) (minimum contacts not satisfied "by demonstrating contacts between the plaintiff (or third parties) and the forum State"). Without allegations that Atlantic purposefully availed itself of the Illinois market or Illinois law, the plaintiffs have failed to make a *prima facie* showing of Atlantic's sufficient contacts with Illinois.

The plaintiffs also fall short on their burden of showing that their claim against Atlantic arises out of or relates to Illinois-directed conduct. "Specific jurisdiction must rest on the litigation-specific conduct of the defendant in the proposed forum state." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014). The plaintiffs' only claim against Atlantic is for breach of contract, which arises out of Atlantic's alleged non-performance under the Atlantic Agreement. (R. 52 ¶¶ 67–85.) That Agreement was between Atlantic and Inter-Pan; the plaintiffs are not signatories. (*Id.* ¶ 19; *see also id.* at 15–21.) As explained above, that agreement contemplated performance in New York and was governed by that state's laws. (*Id.* ¶ 24.) Atlantic's alleged failure to perform, therefore, is tethered to New York—not Illinois. Further, the plaintiffs' arguments focus on their connection to Illinois, but what matters is Atlantic's contacts with Illinois. *Myers*, 143 F.4th at 774 (emphasis in original) (argument that "a corporate defendant has *some* sufficient contact with the forum . . . [and] the plaintiff resides in the state . . . downplays the importance of the defendant's forum contacts and gives too much weight to the plaintiff's contacts"). The plaintiffs therefore fail to meet their burden on the second prong.

Because the plaintiffs' allegations fall short on the first two prongs, the Court need not address the fairness prong. *Schoeps*, 160 F.4th at 830 (citing *Myers*, 143 F.4th at 775). Further, because the Court lacks personal jurisdiction over Atlantic, it need not reach Atlantic's motion under Rule 12(b)(6). *Sikhs for Just. v. Badal*, 736 F.3d 743, 751 (7th Cir. 2013) ("For without personal jurisdiction, a court has no authority to adjudicate a case on the merits.").

Date: September 3, 2026

JEREMY C. DANIEL
United States District Judge